**Janice R. BOHAC, Petitioner,**

v.

**DEPARTMENT OF AGRICULTURE, Respondent.**

**No. 99–3306.**

United States Court of Appeals, Federal Circuit.

Feb. 14, 2001.

**1336**

Ernest C. Hadley, Law Offices of Ernest C. Hadley, P.C., of West Wareham, MA, argued for petitioner. Joyce F. Glucksman, Joyce F. Glucksman, P.C., of Atlanta, on the brief for petitioner.

Craig R. Gottlieb, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. On the brief were David M. Cohen, Director; Robert E. Kirschman, Jr., Assistant Director; and Thomas A. Coulter, Trial Attorney. Of counsel was Sean P. Kelly, Attorney, Office of the General Counsel, Department of Agriculture, of Washington, DC.

Ernest C. Hadley, Law Office of Ernest C. Hadley, P.C., of West Wareham, MA, for amicus curiae Dwight F. Hasler.

Before LOURIE, LINN, and DYK, Circuit Judges.

DYK, Circuit Judge.

This case presents the issue whether non-pecuniary damages-here recovery for alleged pain and suffering, injury to reputation, and injury to family life-are recoverable under section 1221 of the Whistleblower Protection Act. 5 U.S.C. § 1221(g)(1)(A)(ii). We hold that non-pecuniary damages are not recoverable and that the government has not waived its sovereign immunity with respect to such claims. Accordingly, we affirm the decision of the Merit Systems Protection Board ("Board").

I

In 1998, Janice Bohac ("petitioner") successfully appealed her removal from her research geneticist position with the United States Department of Agriculture ("agency") on the ground that her removal violated the Whistleblower Protection Act. On July 14, 1998, Ms. Bohac filed a motion for damages, requesting an award of $14,021.32 for pecuniary losses, and $150,000 for non-pecuniary damages. The non-pecuniary damages sought by Ms. Bohac included damages for physical and emotional suffering, damage to her personal and professional reputation, and damages for various injuries to her family life. In an October 26, 1998, initial decision an administrative judge for the Board awarded Ms. Bohac pecuniary damages in the amount requested, but denied her claim for non-pecuniary damages. The administrative judge held that non-pecuniary damages do not constitute "consequential damages" allowable under the Whistleblower Protection Act. Ms. Bohac petitioned for review of the initial decision to the full Board.

On April 21, 1999, the Board denied Ms. Bohac's petition for review based on *Kinney v. Department of Agriculture,* 82 M.S.P.R. 338 (1999), where the Board held that it does not have authority under 5 U.S.C. § 1221(g)(1)(A)(ii) to award non-pecuniary damages. *Bohac v. Dep't of Agric.,* No. AT–0752–97–0224–P–1

(M.S.P.B. Apr.21, 1999). Ms. Bohac then sought review in this court.

## II

 We have jurisdiction over this petition for review pursuant to 28 U.S.C. § 1295(a)(9). Our review of the Board's decision requires statutory interpretation which is a question of law. *Watson v. Dep't of Justice*, 64 F.3d 1524, 1528 (Fed. Cir.1995). We review questions of law *de novo. King v. Dept. of Health & Human Servs.*, 133 F.3d 1450, 1452 (Fed.Cir.1998); *King v. Briggs*, 83 F.3d 1384, 1387 (Fed. Cir.1996).

## III

Congress passed the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (codified in scattered sections of 5 U.S.C.) ("WPA"), to protect "government employees from being punished for disclosing potentially embarrassing information about the operation of government." *Weber v. Dep't of the Army*, 9 F.3d 97, 101 (Fed.Cir.1993). In the WPA, Congress expressed its intention to strengthen the protections available to Federal whistleblowers from reprisals for protected disclosures of information. Pub.L. No. 101–12, § 2(b), 103 Stat. 16, 16. Congress created, *inter alia,* an individual right of action under 5 U.S.C. § 1221(a) to complement the relief previously available through the Office of Special Counsel ("OSC"), and expanded other rights for protected whistleblowers. Pub.L. No. 101–12, § 3(a)(11), 103 Stat. 16, 19.

Pursuant to 5 U.S.C. § 1221(a), an employee affected by personnel actions alleged to have been in retaliation for whistleblowing must first seek corrective action from the OSC under section 1214 of title 5. 5 U.S.C. §§ 1214(a)(3), 1221(a); *Marano v. Dep't of Justice*, 2 F.3d 1137, 1139 (Fed. Cir.1993). If the employee is unsuccessful before the OSC, the employee may then file an individual right of action ("IRA") seeking corrective action from the Board. 5 U.S.C. § 1214(a)(3); *Marano*, 2 F.3d at 1139–40.

Under the WPA of 1989, a prevailing employee, in addition to the corrective action, could recover only "reasonable attorney's fees and any other reasonable costs incurred." 5 U.S.C. §§ 1221(g)(1)-(2) (1988 & Supp. V 1993).[1] In the 1994 amendments to the WPA, Congress also provided additional rights and remedies for protected whistleblowers. Specifically, the 1994 amendments, Pub.L. 103–424, § 8(b)(2), 108 Stat. 4361, 4365, amended section 1221(g) by inserting new paragraph (1)(A) providing that "corrective action" by the Board may include:

(i) that the individual be placed, as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred; and

(ii) back pay and related benefits, medical costs incurred, travel expenses, and

---

1. In 1991, the Board ruled that this recovery was limited to "recovery of costs incurred by an attorney on behalf of a prevailing [whistleblower]," but not costs that the whistleblowers incurred themselves. *Wiatr v. Dep't of the Air Force*, 50 M.S.P.R. 441, 451–52 (1991); *see* S.Rep. No. 103–358, at 8 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3549, 3557. In 1993, the Board overruled the holding of *Wiatr*, finding that the term "and any other reasonable costs" includes "cost directly incurred by an appellant." *Bonggat v. Dep't of the Navy*, 59 M.S.P.R. 175, 179 (1993). In 1994, when Congress amended the WPA, the language in the attorneys' fees and costs provision in section 1221 was not materially changed. *Compare* 5 U.S.C. §§ 1221(g)(1)-(3) (1994) *with* 5 U.S.C. §§ 1221(g)(1)-(2) (1993). However, in the accompanying legislative history Congress expressly endorsed the Board's position in *Bonggat* that the term "reasonable attorney's fee and any other reasonable costs incurred" in 5 U.S.C. § 1221(g) includes costs that whistleblowers incur themselves. The Senate Report agreed that "a prevailing whistleblower is entitled to attorneys' fees and any other reasonable costs incurred directly or indirectly by the whistleblower in connection with the litigation ." S.Rep. No. 103–358, at 8 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3549, 3557.

*any other reasonable and foreseeable consequential changes.*

5 U.S.C. § 1221(g)(1)(A) (emphasis added). (At the same time, Congress also amended 5 U.S.C. § 1214, and expanded the relief available in actions initiated by the OSC by adding a new subsection (g) with similarly worded provisions.[2] Pub.L. 103–424, § 8(a), 108 Stat. 4361, 4364–65.) New subparagraph (i) of section 1221(g)(1)(A) generally clarified the types of "corrective action" already available, but subparagraph (ii) was new in the 1994 amendments. The issue before us is the meaning of the phrase "any other reasonable and foreseeable consequential changes" in section 1221(g) of the current statute.

## IV

■ At the outset we are confronted by the inconvenient fact that the WPA does not in fact provide for the recovery of consequential "damages," although both parties urge us to treat it as though it did. Rather, as enacted, and as it appears in the Statutes at Large and in the U.S.Code, the provision, 5 U.S.C. § 1221(g)(1)(A)(ii), allows recovery for "consequential changes." The reference to "changes" is obviously a mistake.[3] It is well-established that an appellate court may interpret statutes to correct such obvious mistakes. *See United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 462, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (disregarding a scrivener's error on punctuation because it was against the

"overwhelming evidence from the structure, language, and subject matter of the … Act"); *United States v. Colon–Ortiz*, 866 F.2d 6, 10 (1st Cir.) (finding that extra language was "an inadvertent drafting error, and should be stricken from the statute," and that "in legislative (as in judicial) affairs, allowance must be made for human error and inadvertence"), *cert. denied*, 490 U.S. 1051, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989); 2A Norman J. Singer, *Statutes and Statutory Construction* § 46.06, at 192–93 (6th ed.2000). This is such a situation where it is appropriate for us to interpret the statute by disregarding an obvious mistake in the text of the statute.

■ The question, however, becomes: what was the mistake? The parties urge that "changes" in section 1221(g)(1)(A)(ii) was intended to be "damages." However, it is also possible that "changes" was intended to be "charges." On balance, we think that the parties' reading is correct. Section 1214(g) of title 5, the counterpart provision of section 1221(g) for actions brought by the OSC rather than as an individual right of action, provides for recovery of "consequential damages." These two provisions were enacted at the same time in the 1994 Amendment, and contain nearly identical language. Pub.L. 103–424, §§ 8(a) and (b)(2), 108 Stat. 4361, 4364–65. The inference is strong that Congress intended the same scope of recovery under section 1221(g) as under section 1214(g).

Lastly, the legislative history apparently does not contain any references to

---

**2.** Newly added subsection (g) of 5 U.S.C. § 1214 recites that corrective action under section 1214 may include:

(1) that the individual be placed, as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred; and

(2) reimbursement for attorney's fees, back pay and related benefits, medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages.

**3.** The Board has consistently agreed, holding that although the "statutory provision refers to consequential 'changes' … it is apparent that consequential 'damages' were intended." *Hoever v. Dep't of the Navy*, 70 M.S.P.R. 386, 388 n. 2 (1996); *see also Kinney v. Dep't of Agric.*, 82 M.S.P.R. 338, 339–40, *appeal dismissed*, 215 F.3d 1342 (Fed.Cir.1999) (unpublished disposition); *Hasler v. Dep't of the Air Force*, 79 M.S.P.R. 415, 422 n. 2 (1998) (Vice Chair Slavet, dissenting).

"changes" but instead refers to "damages." 140 Cong. Rec. H11421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey) ("[T]he expanded provisions for consequential *damages* and attorney fees are intended to provide a realistic expectation that employees who prevail will recover their costs . . . ." (emphasis added)). We conclude that "changes" should be construed to be "damages" in section 1221(g)(1)(A)(ii).

## V

As might be expected, the parties urge opposite positions with respect to the interpretation of the phrase "consequential damages." Petitioner suggests that Congress intended to incorporate the contract law concept of consequential damages, meaning foreseeable damages, as most famously announced in *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854), and that non-pecuniary damages are recoverable. The government, on the other hand, urges that the term refers to pecuniary damages by which it means reimbursement of out-of-pocket costs. While the issue is not free from doubt, we conclude that the government is correct.

■ Because this is a suit against the government, we cannot allow recovery unless there has been a waiver of sovereign immunity. The Supreme Court ruled in *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996), that a "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." *See also United States v. Nordic Village, Inc.,* 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Moreover, a waiver of sovereign immunity must be strictly construed in favor of the sovereign. *Lane,* 518 U.S. at 192, 116 S.Ct. 2092; *Nordic Village,* 503 U.S. at 34, 112 S.Ct. 1011; *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d

250 (1986). While the Supreme Court recently appears to have allowed greater latitude for interpreting the scope of sovereign immunity waivers in the light of "statutory purposes, history, and the absence of convincing reason for denying" a waiver, *West v. Gibson,* 527 U.S. 212, 222, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999), we are satisfied that even under the more liberal standard of *West v. Gibson,* the petitioner's interpretation must fail.

■ First, the term "consequential damages" does not have a well-established common law meaning that includes non-pecuniary damages. In interpreting a Congressional statute using common law terminology, there is a presumption that Congress intended the common law meaning. As the Supreme Court noted in *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952), "where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice" it is presumed to know and adopt the common law concepts. It is therefore a "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms." *United States v. Shabani,* 513 U.S. 10, 13, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994); *see also United States v. Wells,* 519 U.S. 482, 491, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997) (articulating the presumption "that Congress incorporates the common-law meaning of the terms it uses if those terms have accumulated settled meaning under the common law and the statute does not otherwise dictate" (quoting *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992))).

Many of the authorities discussing the term "consequential damages" cited by the parties here do not reflect common law usage at all. Instead they reflect casual use by courts to describe particular types

of damages or use of the term in a variety of other statutory contexts. The usage in those contexts varies considerably, and the authorities are essentially unhelpful.[4]

■ More pertinently, petitioner urges us to apply the common law contract law concept of "consequential damages," including the foreseeability test of *Hadley v. Baxendale*. Even if we were to assume, as petitioner urges, that Congress intended to incorporate the meaning of the phrase "consequential damages" from contract law, this does not suggest the result that petitioner seeks. The concept of "consequential damages" in contract law relates to the concept of foreseeability at the time the contract is executed, not, as the petitioner would have it, foreseeability at the time of the breach. *See Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1300 (Fed.Cir.1986); Restatement (Second) of Contracts § 351(1), cmt. a (1979); *see also* 11 Samuel Williston, *Williston on Contracts* §§ 1347, 1348, at 251–53, 259 (3d ed.1968). In general, this has led the courts to limit recovery to pecuniary damages, which are most likely to be foreseeable at the time of contracting, as opposed to non-pecuniary damages, which are more dependent on the circumstances of the individual plaintiff at the time of the breach. *See, e.g., Pierce v. Int'l Ins. Co. of Ill.*, 671 A.2d 1361, 1367 (Del.1996); *Stan-*

*back v. Stanback*, 297 N.C. 181, 254 S.E.2d 611, 616–17 (1979).

The cases have focused particularly on damages for emotional distress. Under the traditional contract law approach, "[i]t is well established that, as a general rule, no damages will be awarded for the mental distress or emotional trauma that may be caused by a breach of contract." John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 14.5(b), at 549 (4th ed.1998); *see also* Williston, *Williston on Contracts* §§ 1338, 1341, at 200, 214; Restatement (Second) of Contracts § 353. To be sure there are exceptions, such as contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Restatement (Second) of Contracts § 353 cmt. a; 5 Arthur L. Corbin, *Corbin on Contracts* § 1076, at 434 (1964). In these cases, however, breach of the contract is particularly likely to cause serious emotional disturbance. Restatement (Second) of Contracts § 353, cmt. a. Moreover, with the limited exception of contracts for the delivery of messages concerning death, damages for mental suffering are usually refused absent wanton and willful misconduct. Corbin, *Corbin on Contracts* § 1076, at 434. Ordinary negligence does not suffice. *Id.* at 434–35, 254 S.E.2d 611.

4. *See, e.g., United States v. Burke*, 504 U.S. 229, 239, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (stating that "[n]othing in this remedial scheme [of Title VII prior to the Civil Rights Act of 1991] purports to recompense a ... plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or *other consequential damages* (e.g., a ruined credit rating)" (emphasis added)); *Schweiker v. Chilicky*, 487 U.S. 412, 425, 436–37, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (Brennan, J., dissenting) (discussing how the "continuing disability review" program statute provides for "economic consequential damages" which does not include damages for "emotional or dignitary harms"); *Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 646 (10th Cir.1991) (upholding district court finding that defendant's attempted exclusion of "consequential damages" by a limitation on the bottom of an invoice was void because it was unconscionable); Ga. Code Ann. § 11–2a–520(2) (defining the types of "consequential damages" that may be awarded for a lessor's default); Ga.Code Ann. § 11–4–402(b) (defining a bank's liability to its customer for damages caused by wrongful dishonor and limiting bank's liability to "actual damages proved ... and damages for arrest or prosecution of the customer or other consequential damages"); Ga.Code Ann. § 51–12–3(b) (defining "consequential damages" as "those which are the necessary and connected effect of a tortious act, even though they are to some extent dependent upon other circumstances").

This case clearly does not fit into any of these categories of cases for which awards of mental suffering were awarded for breach of contract at common law. Indeed, a whistleblowing claim seems most closely akin to a claim for wrongful discharge and, historically, at common law only traditional contract damages were recoverable for such claims. *See* 2 Mark A. Rothstein et al., *Employment Law* § 8.21, at 315–16 (1999).

Petitioner cites a number of wrongful discharge cases beginning in the 1980s, such as *Wiskotoni v. Michigan National Bank–West,* 716 F.2d 378 (6th Cir.1983) and *Smith v. Atlas Off–Shore Boat Service, Inc.,* 653 F.2d 1057 (5th Cir.1981), which have allowed emotional distress damages. Such wrongful discharge claims are sometimes based in contract and sometimes in tort. *See generally* Rothstein et al., *Employment Law* § 8.21, at 315–16; Mark A. Player, *Employment Discrimination Law* § 1.06a, at 11–12 (1988). Some courts, such as those in *Wiskontoni* and *Smith,* have upheld awards of emotional distress damages for wrongful discharge where public policy concerns are implicated. Others have refused to award emotional distress damages for wrongful discharge, thereby limiting damages to ordinary contract damages. *See, e.g., Francis v. Lee Enters. Inc.,* 89 Hawai'i 234, 971 P.2d 707, 708 (1999) (rejecting cause of action for breach of employment contract based in torts, and limiting emotional distress damages to situations where parties specifically provided for them in contract); *Hummer v. Evans,* 129 Idaho 274, 923 P.2d 981, 987 (1996) (breach of covenant of good faith and fair dealing in at-will employment context raises claim under contract law, not tort law). Thus, while the common law limits on wrongful discharge damages may have changed in at least some states, it is clear that historically there was no uniform common law

rule in this area allowing recovery of non-pecuniary damages, much less an established common law meaning of the term "consequential damages" that would include non-pecuniary damages in the context of contract law. We have also been unable to determine that the term "consequential damages" has any well-defined common law meaning in the tort context, and neither party urges that it does.

■■■■ Second, if Congress had intended to allow broad recovery for non-pecuniary damages, it seems likely that it would have used the well-understood term "compensatory damages." " 'Compensatory damages' are the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him." Restatement (Second) of Torts § 903 (1979). Compensatory damages are divided into two categories: pecuniary and non-pecuniary. *Id.* at §§ 905 and 906. Non-pecuniary compensatory damages include compensation for bodily harm and emotional distress, and are awarded without proof of pecuniary loss. *Id.* at § 905. It is well-understood that the term "compensatory damages" includes non-pecuniary damages such as pain and suffering. For example, when Congress passed the Civil Rights Act of 1991, adding 42 U.S.C. § 1981a, it expressly provided for awards of "compensatory and punitive damages" to employees prevailing on claims of discrimination. 42 U.S.C. § 1981a(a)(1). Congress provided a precise definition of "compensatory and punitive damages" in the Civil Rights Act, listing "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" in the language of the statute itself, and then set limits on the amount that an award for these damages could total. 42 U.S.C. § 1981a(b)(3). Unlike the Civil Rights Act of 1991, section 1221 of the WPA neither expressly grants "compensatory damages" nor lists exam-

ples of the types of damages that would include non-pecuniary damages. This comparison illustrates that Congress knows how to provide damages for non-pecuniary losses, including pain and suffering, when it so desires. It did not do so in the 1994 amendments to the WPA.

Third, petitioner points to a language difference between sections 1214(g) and 1221(g). Section 1214 provides for *"reimbursement for attorney's fees,* back pay and related benefits, medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages," while section 1221 simply provides "back pay and related benefits, medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential [damages]." *Compare* 5 U.S.C. § 1214(g)(2) *with* 5 U.S.C. § 1221(g)(1)(A)(ii) (emphasis added). The difference in language is most likely explained by the fact that section 1214 includes attorney's fees in the list of damages that "may" be awarded, while section 1221 treats attorney's fees separately, mandating that they "shall" be awarded. *Compare* 5 U.S.C. § 1214(g)(2) *with* 5 U.S.C. § 1221(g). Indeed, the use of the term "reimbursement" in section 1214, and the intended parallelism between sections 1214 and 1221 is further confirmation that section 1221, like section 1214, was designed to allow only for reimbursement of out-of-pocket costs.[5]

■ Fourth, application of the interpretive rule of *ejusdem generis* to 5 U.S.C.

§ 1221(g)(1)(A)(ii) leads us to the conclusion that Congress intended a narrow construction of "consequential damages" in the 1994 amendment to the WPA. "Under the rule of *ejusdem generis,* which means 'of the same kind,' where an enumeration of specific things is followed by a general word or phrase, the general word or phrase is held to refer to things of the same kind as those specified." *Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1392 (Fed.Cir.1994); *see generally* 2A Norman J. Singer, *Statutes and Statutory Construction* § 47.17, at 273–74 (6th ed. 2000) ("Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."). It is appropriate to apply *ejusdem generis* in interpreting the language of 5 U.S.C. § 1221(g)(1)(A)(ii). The section includes a list of three specific authorized forms of relief: (1) back pay and related benefits; (2) medical costs incurred; and (3) travel expenses. The section then includes a concluding phrase: "and any other reasonable and foreseeable consequential [damages]." Under *ejusdem generis,* the general phrase "any other reasonable and foreseeable consequential [damages]" should be read to cover only items similar in nature to the specific items. In this case, the three specifically listed items are all actual monetary losses or out-of-pocket expenses. None of these items includes non-pecuniary damages such as those sought by petitioner.

**5.** Petitioner urges that the term "consequential damages" must include non-pecuniary damages because not all prohibited personnel actions cause pecuniary damages. In particular, petitioner argues that the 1994 amendments expanded the definition of these "personnel actions" which may constitute a prohibited personnel action to also include certain actions that allegedly do not cause pecuniary damages. For example, petitioner notes that the 1994 amendments, Pub.L. No. 103–424, § 5(a), 108 Stat. 4361, 4363, added "a decision to order psychiatric testing or examination" to the prohibited personnel actions listed at 5 U.S.C. § 2302(a)(2)(A). We

do not agree with petitioner's assertion that these personnel actions could not result in out-of-pocket expenses being incurred. For example, an order to undergo psychiatric testing could certainly result in the employee incurring medical bills and other expenses. In any event, even if not all prohibited personnel actions in fact result in pecuniary damages, the main remedy for a prohibited personnel action is a "corrective action" which restores the employee to his or her previous position, or a position with equivalent pay and status. Congress did not assume that all prohibited personnel actions necessarily cause consequential damages.

Finally, the legislative history of the 1994 amendments to the WPA makes no reference to compensatory damages or the types of damages for which recovery is now sought. There is a noticeable lack of discussion concerning the type of damages that an aggrieved party may receive. For example, two references in the Senate Report to damages available to a prevailing whistleblower hardly endorse the petitioner's theory. The Senate Report states that "a prevailing whistleblower is entitled to attorneys' fee and any other reasonable *costs* incurred directly or indirectly by the whistleblower in connection with the litigation." S.Rep. No. 103–358, at 8 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3549, 3557 (emphasis added). This statement does not suggest an intention to expand the damages available to also include non-pecuniary damages. The petitioner further relies on a statement in the Senate Report that the Act "allows the Board to order corrective action that will make, as nearly as possible, the individual 'whole.'" S.Rep. No. 103–358, at 11 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3549, 3559. This is merely a general statement about the purpose of the statute and does not contradict the government's interpretation of the statute. Contrary to petitioner's assertions, making an individual "whole" does not mean that the individual is entitled to non-pecuniary losses. Rather, this statement could just as easily mean that an individual will be wholly reimbursed for his out-of-pocket or pecuniary losses. The House Committee Report for the proposed 1994 amendments discusses making a whistleblower "whole" in the context of reimbursement of expenses. That report, H.R.Rep. No. 103–769, at 18 (1994), for example, criticizes a body of case law that "does not permit employees to be made whole through payment of *consequential expenses* incurred as a result of an improper personnel action." (Emphasis added).

## CONCLUSION

For all of these reasons we conclude that the term "consequential dam-

ages" in section 1221(g) is limited to reimbursement of out-of-pocket costs and does not include non-pecuniary damages.

*AFFIRMED.*