# United States Court of Appeals for the Federal Circuit

---

**DEBORAH A. PERLICK,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2023-1091

---

Petition for review of the Merit Systems Protection Board in No. NY-1221-19-0052-P-2.

---

Decided: June 20, 2024

---

PATRICK JOHN WALSH, Stulberg & Walsh, LLP, New York, NY, argued for petitioner. Also represented by ROBERT B. STULBERG.

DAVID MICHAEL KERR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

Before DYK and CUNNINGHAM, *Circuit Judges*, and BENCIVENGO, *District Judge*.[1]

BENCIVENGO, *District Judge*.

Dr. Deborah A. Perlick petitions for review of a decision of the Merit Systems Protection Board ("the Board") denying-in-part and granting-in-part her request for consequential damages and compensatory damages pursuant to 5 U.S.C. § 1221(g). *Perlick, Deborah A. v. Dep't of Veterans Affs.*, No. NY-1221-19-0052-P-2, 2022 WL 2905315 (M.S.P.B. July 18, 2022) ("*Decision*") (J.A. 77–109).[2] We vacate the Board's decision and remand for further proceedings consistent with this opinion.

## BACKGROUND

In July 2010, the Department of Veterans Affairs ("VA") hired Dr. Deborah A. Perlick as a temporary Research Health Science Specialist for a one-year term, subject to renewal. *Decision* at 78; J.A. 13–14. From 2010 through 2017, the VA renewed Perlick's term each year coinciding with the duration of federally funded research projects Perlick worked on. J.A. 366–73.

In September 2017, while serving as the Principal Investigator for a multi-site study on veterans with mild traumatic brain injury, Perlick discovered approximately $78,000 missing from the study's funding. *See Decision* at 78–80. She reported the missing funds to various VA officials. *Decision* at 79–80. On November 3, 2017, Perlick

---

[1]　Honorable Cathy Ann Bencivengo, District Judge, United States District Court for the Southern District of California, sitting by designation.

[2]　Because the reported version of the Board's decision is not paginated, citations in this opinion are to the version of the Board's decision included in the Joint Appendix. For example, *Decision* at 1 is found at J.A. 1.

was terminated. *Decision* at 79; J.A. 362. She was 67 years old and had worked for the VA for over 20 years. *Decision* at 79; J.A. 1290.

Perlick filed a complaint with the Office of Special Counsel seeking corrective action under the Whistleblower Protection Act ("WPA") and received no response. J.A. 17–18. Perlick subsequently filed an Individual Right of Action appeal with the Board under the WPA. J.A. 12. The Board found Perlick had established her claim of protected whistleblowing disclosures and that her request for corrective action must be granted. J.A. 36. Perlick was awarded back pay through March 31, 2020, which was the completion date of the last federally funded research project that Perlick worked on at the VA. J.A. 36, 63, 80, 1250.

Perlick later moved for both consequential and compensatory damages pursuant to 5 U.S.C. § 1221(g)(1)(A). *Decision* at 83; *see* J.A. 1245–79. She requested $2.146 million in consequential damages, in the form of (1) actual and projected annual salary, (2) estimated lost retirement contributions, and (3) actual and anticipated medical costs.[3] *Decision* at 85–86; J.A. 1270. She also sought $500,000 in compensatory damages for reputational harm and emotional distress. *Decision* at 88; J.A. 1272–78. In support of her request for these damages, Perlick provided an affidavit, letters of support, and an expert report opining on the recovery of future lost earnings. *Decision* at 85–86.

The Board found Perlick is not entitled to consequential damages under 5 U.S.C. § 1221(g), stating that the Federal Circuit has explained such damages "are limited to out-of-pocket costs and do not include non-pecuniary

---

[3]   Perlick's claim for consequential damages in the form of medical costs were denied. *Decision* at 87–88. Perlick does not challenge the denial of medical costs, and we do not review that denial in this opinion.

damages . . . ." *Decision* at 84 (citing *Bohac v. Department of Agriculture*, 239 F.3d 1334, 1340–43 (Fed. Cir. 2001)). The Board explained that Perlick "has the burden of proving the claimed damages by preponderant evidence." *Decision* at 84. The Board then concluded that damages for lost earning capacity were not recoverable because Perlick had "no guarantees of future employment" beyond the March 31, 2020 completion date of her final project with the VA. *Decision* at 87. In denying Perlick's request for consequential damages, the Board also found Perlick's expert "assume[d] that [she] was going to work until the age of 80, which is based on mere conjecture, not facts." *Decision* at 87. The Board cited a letter of support from Perlick's ex-husband, finding that this letter—like Perlick's expert—conveyed that "senior researchers like [Perlick] find it extremely difficult to get a job even without rumors of professional malfeasance." *Decision* at 85.

The Board then considered the damages Perlick identified under the consequential damages portion of her motion as a request for pecuniary compensatory damages. *See Decision* at 89. The Board found that "[f]or the same reasons . . . already mentioned above"—i.e., in the consequential damages section of the Board's decision—"[Perlick] is not entitled to future pecuniary losses in the form of future earnings and retirement contributions." *Decision* at 89. Ultimately, the Board denied Perlick's request for consequential damages altogether, *see Decision* at 84–88, and found she was "only entitled to an award of $20,000 in nonpecuniary, compensatory damages." *Decision* at 99.

Perlick petitions for review of the Board's decision as to the denial of future lost earnings. *Decision* at 77–100.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

"Statutory interpretation is an issue of law that we review de novo." *Bank of Am. Corp. v. United States*, 964 F.3d 1099, 1103 (Fed. Cir. 2020) (citation omitted).

"We review the Board's determinations of law for correctness without deference to the Board's decision." *Harrington v. Dep't of Veterans Affs.*, 981 F.3d 1356, 1358 (Fed. Cir. 2020) (citation omitted). We set aside any decisions from the Board that are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

### A

Before conducting a review of the Board's decision, we must determine whether future lost earnings are recoverable as damages pursuant to 5 U.S.C. § 1221(g)(1)(A)(ii). We find that future lost earnings are recoverable as compensatory damages pursuant to § 1221(g)(1)(A)(ii).

The WPA provides "legal protection for whistleblowers within the civil service" and its burden-shifting framework "reflect[s] a determination that '[w]histleblowing should never be a factor that contributes in any way to an adverse personnel action.'" *Murray v. UBS Sec., LLC*, 144 S. Ct. 445, 450 (2024) (quoting 135 Cong. Rec. 5032, 5033 (1989)). Under the WPA, an employee subject to retaliation as a result of whistleblowing can seek corrective action from the Office of Special Counsel. 5 U.S.C. § 1214(a)(3). If the Office of Special Counsel denies an employee's request, the employee may file an Individual Right of Action under 5 U.S.C. § 1221 seeking corrective action from the Board. *Id.* Congress defined in 5 U.S.C. § 1221(g)(1)(A) what such corrective action may include. Perlick's petition to this court turns in part on our interpretation of this corrective action provision.

In a case turning on statutory interpretation, "[o]ur starting point is the language of the statute, but we also look to the provisions of the whole law, and its object and policy." *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025, 1031 (Fed. Cir. 2022) (quotation marks omitted) (cleaned up); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Our first job is to "try to determine congressional intent, using traditional tools of statutory construction." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990). "Beyond the statute's text, [the traditional tools of statutory construction] include the statute's structure, canons of statutory construction, and legislative history." *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).

The current language of the corrective action provision provides that

> [i]f the Board orders corrective action under [5 U.S.C. § 1221], such corrective action may include:
>
> > (i) that the individual be placed, as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred; and
> >
> > (ii) back pay and related benefits, medical costs incurred, travel expenses, *any other reasonable and foreseeable consequential damages*, and *compensatory damages* (including interest, reasonable expert witness fees, and costs).

5 U.S.C. §§ 1221(g)(1)(A)(i)–(ii) (emphasis added).

The common law meaning of "compensatory damages," *id.* at § 1221(g)(1)(A)(ii), indicates future lost earnings are classifiable as such. It is a "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms." *United States v. Shabani*, 513 U.S. 10, 13 (1994);

*see also United States v. Wells*, 519 U.S. 482, 491 (1997); *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 187 (2016). In common law, "'[c]ompensatory damages' are the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him." Restatement (Second) of Torts § 903 (1979); *Bohac*, 239 F.3d at 1341. Compensatory damages are divided into two categories: pecuniary and non-pecuniary. Restatement (Second) of Torts §§ 905 and 906 (1979).

Pecuniary compensatory damages include future pecuniary losses, such as "harm to earning capacity." *Id.* at § 906. A comment to the relevant Restatement section explains that loss in earning capacity may result from "harm to reputation, as when, because of defamation, a person has been prevented from obtaining profitable employment." *Id.* at § 906 cmt. c. This is the same kind of future lost earnings that may result from protected whistleblower activities, where an employee's reputation is harmed due to making protected disclosures, leading to loss in earning capacity. By including the term "compensatory damages" in the statute, Congress showed its intent for protected whistleblower corrective action to include such future pecuniary losses.

The legislative history further supports that future lost earnings are recoverable under 5 U.S.C. § 1221(g)(1)(A). The original Whistleblower Protection Act of 1989 provided that the Board could grant a request for corrective action that included "reasonable attorney's fees and any other reasonable costs incurred." Pub.L. No. 101-12, § 3, 103 Stat. 16, 30 (codified at 5 U.S.C. §§ 1221(g)(1)–(2) (1989)). In 1994 amendments to the WPA, Congress provided additional rights and remedies for protected whistleblowers. The 1994 amendments expanded the corrective action provision to include "(i) that the individual be placed, as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred" and "(ii) back pay and related benefits, medical costs incurred,

travel expenses, and any other reasonable and foreseeable consequential changes." Pub.L. No. 103-424, § 8(b)(2), 108 Stat. 4361, 4365 (codified at 5 U.S.C. §§ 1221(g)(1)(A)(i)–(ii) (1994)). Congress thus expanded the recovery available to protected whistleblowers; with the addition of § 1221(g)(1)(A)(i), Congress expressed its intent to provide protected employees with make-whole relief.

This trend continued in 2012 when Congress enacted the Whistleblower Protection Enhancement Act of 2012 ("WPEA"). Pub.L. No. 112-199, 126 Stat. 1465. The WPEA further expanded the recovery available to protected employees by adding "compensatory damages (including interest, reasonable expert witness fees, and costs)" to the corrective actions available under § 1221(g)(1)(A)(ii). Pub.L. No. 112-199, § 107(b), 126 Stat. 1465, 1469. Allowing protected whistleblowers to recover future lost earnings as compensatory damages comports with the intent of Congress: to provide covered whistleblowers with make-whole relief. *See* 5 U.S.C. § 1221(g)(1)(A)(i) (the Board may order corrective action such that the individual be "placed, as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred"). Congress's expansion of the recovery available for protected whistleblowers indicates we should interpret the 2012 addition of "compensatory damages" broadly. Here, we think it is clear that compensatory damages encompass future lost earnings.

Interpretations of similar statutes support the conclusion that future lost earnings are recoverable as compensatory damages. For instance, recovery for lost future earnings under Title VII of the Civil Rights Act, which governs recovery for those who suffer from employment discrimination, "compensate plaintiff for a lifetime of diminished earnings resulting from . . . reputational harms." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 953 (7th Cir. 1998). Additionally, "the award of future lost earnings in Title VII cases is an alternative to the

traditional equitable remedy of reinstatement." *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 890 (3d Cir. 1984). Like our sister circuits who interpreted this recovery as a compensatory damage under Title VII, we hold that future lost earnings are recoverable as compensatory damages pursuant to § 1221(g)(1)(A)(ii). The Board here was correct to consider Perlick's request for them as such.

We need not decide at this time whether future lost earnings are also recoverable as consequential damages pursuant to 5 U.S.C. § 1221(g)(1)(A)(ii). In *Bohac*, we interpreted the phrase "any other reasonable and foreseeable consequential changes" in a previous version of the corrective action provision. *See* 239 F.3d at 1337–43 (interpreting the phrase as used in 5 U.S.C. § 1221(g)(1)(A)(ii) (1994)); Pub.L. No. 103-424, § 8(b)(2), 108 Stat. 4361, 4365 (1994 amendments to the WPA). We concluded "the term 'consequential damages' in section 1221(g) is limited to reimbursement of out-of-pocket costs." 239 F.3d at 1343.

The issue presented in *Bohac* was limited to whether non-pecuniary damages could be recovered as consequential damages under the limitations of the statute. *Id.* at 1339. In contrast to the current version of the statute, the version of the statute interpreted in *Bohac* did not envision recovery for compensatory damages. *Compare* 5 U.S.C. § 1221(g)(1)(A)(ii) (1994), *with* 5 U.S.C. § 1221(g)(1)(A)(ii) (as amended by the WPEA, Pub.L. No. 112-199, § 107(b), 126 Stat. 1465, 1469). The court noted that "if Congress had intended to allow broad recovery for non-pecuniary damages, it seems likely that it would have used the well-understood term 'compensatory damages'" in the corrective action provision. *Bohac*, 239 F.3d at 1341. The court ultimately found "the term 'consequential damages' in section 1221(g) [under the WPA of 1994] is limited to reimbursement of out-of-pocket costs and does not include non-pecuniary damages." *Id.* at 1343. We do not interfere with the findings of *Bohac*, nor do we hold that future lost earnings are not recoverable as consequential damages under

§ 1221(g).  However, we do note that the corrective action provision has been amended since the *Bohac* decision to include recovery for compensatory damages, and future lost earnings are recoverable as compensatory damages under this provision.

B

We next review the Board's decision denying Perlick's request for future lost earnings as consequential and pecuniary compensatory damages.  We find the Board erred by improperly raising the burden for Perlick to establish these damages.

In her petition for review by this court, Perlick requested "review of that portion of [the Board's] July 18, 2022 Initial Decision . . . that denied Ms. Perlick the full corrective action and remedies she sought from the Board and the Department of Veterans Affairs, including consequential and/or *compensatory damages*."  ECF No. 1 (Petition for Review) at 5 (emphasis added).  We therefore read Perlick's challenge as a challenge of the Board's "Pecuniary Compensatory Damages" denial as well.  This reading is supported by the Board's decision to consider "the damages [Perlick] identified under the consequential damages portion of her motion . . . as a compensatory damages request." *Decision* at 89.  Additionally, the WPEA's make-whole relief provision, 5 U.S.C. §§ 1221(g)(1)(A)(i), indicates Congress's intent that a tribunal should fashion "the most complete relief possible" within the terms of the statute. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975) (finding Congress's intent in vesting discretionary powers in courts was to allow the "fashioning of the most complete relief possible," reaffirming Title VII's "make whole" purpose) (cleaned up).  In this case, we find that intent is best served by treating Perlick's request for future lost earnings as a request for compensatory pecuniary damages.  As we explained above, we consider lost future earnings

recoverable as compensatory damages pursuant to § 1221(g). Accordingly, we focus our analysis on compensatory damages.

We have yet to interpret the proper burden of proof for showing entitlement to compensatory damages under the WPEA. The Board's decision purported to review both consequential and compensatory damages under the WPEA under the preponderance of the evidence standard. *Decision* at 84, 88. To support applying the preponderance standard to compensatory damages determinations, the Board cited to a Board decision reviewing compensatory damages under Title VII, *Sloan v. U.S. Postal Service*, No. AT-0752-94-0387-P-1, 1997 WL 693605 (M.S.P.B. Oct. 29, 1997) and a Board decision reviewing consequential damages under the WPA, *Johnston v. Department of Treasury*, No. NY-1221-00-0220-P-1, 2005 WL 2481560 (M.S.P.B. Aug. 29, 2005). *See Decision* at 88. We find no reason to disturb the Board's burden of proof for these damages.

A Board regulation defines preponderance of the evidence as "the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q); *Holmes v. United States Postal Serv.*, 987 F.3d 1042, 1046 (Fed. Cir. 2021). We have found that the preponderance of the evidence standard does not require certainty. *See Moberly ex rel. Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1322 (Fed. Cir. 2010) (finding that where preponderant evidence is the standard, the "level of proof is not certainty"). Therefore, it was error for the Board to require Perlick to "guarantee" future employment to recover future lost earnings. *See Decision* at 87.

We note the Board's error regarding "guarantees of future employment" was in its consequential damages analysis. *Decision* at 87. We consider this error present in Board's pecuniary compensatory damages analysis as well

because the Board stated "[f]or the same reasons . . . already mentioned above"—i.e., in the consequential damages analysis—"I find that [Perlick] is not entitled to future pecuniary losses in the form of future earnings and retirement contributions." *Decision* at 89.

The VA argues that substantial evidence nonetheless supports the Board's decision because Perlick's time limited appointment only supported a back pay award through March 31, 2020. *See* Respondent's Response Br. at 16–17. This argument is unpersuasive. Back pay, as written in § 1221(g)(1)(A)(ii), is separate and apart from compensatory damages. The back pay award is irrelevant to the inquiry of whether Perlick could establish lost future earnings by a preponderance of the evidence.

On remand, the Board should determine under the preponderance of the evidence standard whether Perlick met her burden to prove entitlement to pecuniary compensatory damages in the form of future lost earnings. We do not review the Board's award of $20,000 in non-pecuniary compensatory damages, *Decision* at 99, nor do we ask the Board to reconsider that award on remand.

The Board acted contrary to law when it raised the burden of proof for Perlick to establish these compensatory damages. Accordingly, we vacate the Board's decision to the extent it fails to properly consider future lost earnings and remand for further proceedings consistent with this opinion.

## VACATED AND REMANDED

COSTS

Costs awarded to petitioner.