**Bruce C. PRATT, Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

No. 00–674C.

United States Court of Federal Claims.

Sept. 25, 2001.

Robert L. Wishner, San Francisco, CA, for plaintiff.

M. Jocelyn Lopez Wright, Washington, DC, with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant.

## OPINION

MILLER, Judge.

This case is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment. The issue for decision is whether disclaimers in a tax sale contract preclude the purchaser's claims for breach when the IRS allegedly failed to properly levy and seize the property and when the tax sale contract also contained language that notice had been given according to legal requirements. Argument is deemed unnecessary.

### FACTS

Except where noted, the following facts are undisputed. Bruce C. Pratt ("plaintiff") is a real estate agent residing in San Francisco, CA. On June 16, 1992, plaintiff purchased real property located at 1547 28th Ave., San Francisco (the "property"), at a tax lien sale conducted by the Internal Revenue Service (the "IRS").

1. *The seizure and sale of the property*

The levy and seizure process began when the property's original owner, Dennis J. Tejada, failed to pay properly assessed federal income taxes on the property for calendar years 1982 and 1983. On February 16, 1988, the IRS filed a Notice of Federal Tax Lien against Mr. Tejada. Before the IRS took further action, Mr. Tejada recorded a grant deed purporting to transfer title of the property to the Dolphin Business Trust ("Dolphin") on November 8, 1991. At that time Mr. Tejada and Linda Caswell were Dolphin's co-trustees. The IRS served a Notice of Levy and a Notice of Seizure on Mr. Tejada four days later. On or about December 2, 1991, Mr. Tejada departed Dolphin, leaving Ms. Caswell as sole trustee. On December 26, 1991, the IRS recorded a Corrected Notice of Tax Lien on the property.[1]

---

1. The original notice had incorrectly also named Mrs. Deborah A. Tejada as an owner of the property.

None of these documents was mailed to or personally served on Ms. Caswell or Dolphin.

On February 5, 1992, the IRS discovered the grant deed from Mr. Tejada to Dolphin. The IRS took no steps to amend the Notices of Levy and Seizure.

On or about May 20, 1992, the IRS mailed to Mr. Tejada a Notice of Public Auction of the property. The notice recited that the property would be sold at public auction pursuant to the Internal Revenue Code, 26 U.S.C. (I.R.C.) § 6335 (1994 & Supp. V 1999). The IRS published notice of the auction, informing purchasers that

> [o]nly the interest of Dennis J. Tejada in and to the property will be offered for sale. If requested, the [IRS] will furnish information about possible encumbrances, which may be useful in determining the value of the interest being sold (See the back of this form for further details.).

The IRS also published a Notice of Encumbrances Against or Interests in Property Offered for Sale (the "Notice of Encumbrances"). The Notice of Encumbrances listed a private California bank and the federal tax lien as senior lienholders and the state of California and Dolphin as junior lienholders. Dolphin was identified as having a "grant deed" interest. The information contained within the Notice of Encumbrances was identical to that available by a title search of public records.

Of significance to this case, the bottom of the Notice of Encumbrances contained a disclaimer that recited:

> The [IRS] does not warrant the correctness or completeness of the above information, and provides the information solely to help the prospective bidders determine the value of the interest being sold. Bidders should, therefore, verify for themselves the validity, priority, and amount of encumbrances against the property offered for sale. Each party listed above was mailed a notice of sale on or before May 21, 1992.

The Public Auction Notice explained the interests of the senior lienholders:

> [T]he property is offered for sale *subject* to any prior valid outstanding mortgages, encumbrances, or other liens in favor of third

parties against the taxpayer that are superior to the lien of the United States.

(Emphasis in original.) As to the junior lienholders, it advised:

> A certificate of sale of personal property given or a deed to real property executed pursuant to section 6338 [governing issuance of such documents] shall discharge such property from all liens, encumbrances, and titles over which the lien of the United States with respect to which the levy was made had priority.

The terms of sale included a general disclaimer:

> All property is offered for sale "where is" and "as is" and without recourse against the United States. No guaranty or warranty, express or implied, is made as to the validity of the title, quality, quantity, weight, size, or condition of any of the property, or its fitness for any use or purpose. No claim will be considered for allowance or adjustment or for rescission of the sale based on failure of the property to conform with any expressed or implied representation.

An identical disclaimer appeared on the Notice of Encumbrances. Yet, following this disclaimer, the Notice of Encumbrances represented: "Notice of sale has been given in accordance with legal requirements."

The property was offered at auction on June 16, 1992. The IRS orally informed potential bidders that a grant deed to the property had been recorded in favor of Ms. Caswell as Dolphin's trustee, but that the grant deed had been recorded after the Notice of Federal Tax Lien had been filed. Plaintiff successfully bid on the property, paying $107,000.00. He subsequently received a Certificate of Sale of Real Property, which stated, *inter alia*, that the deed to the property "will convey the right, title, and interest of the taxpayer to the real property." The deed was issued on December 17, 1992.

### 2. *The legal proceedings*

Following the sale, Ms. Caswell informed plaintiff of Dolphin's position that the seizure and sale of the property had been improper. On February 19, 1993, plaintiff filed a quiet

title action against Ms. Caswell, Dolphin, and the United States in the United States District Court, Northern District of California. The United States answered and filed a Notice of Disclaimer denying any right, title, or interest in the property. At no time did the United States report or allege the sale was defective. Ms. Caswell and Dolphin then successfully moved to dismiss the case for lack of federal jurisdiction.

On April 27, 1994, Dolphin filed a quiet title action against plaintiff, alleging that improprieties in the seizure of the property rendered plaintiff's title defective. Dolphin served the IRS with a subpoena *duces tecum* requesting documents related to the levy and seizure of the property. The IRS informed Dolphin that it was unable to locate the relevant files. On August 17, 1995, the IRS located certain trust documents responsive to the subpoena.[2] The Superior Court for the State of California, County of San Francisco, granted title to plaintiff and awarded him damages proximately flowing from the decision as to title.

On the last day available for appeal, plaintiff sold the property to a third party for $230,000.00. That decision proved premature when Ms. Caswell appealed on the same day. On March 6, 1998, the Court of Appeal of the State of California, First Appellate District, reversed the San Francisco superior court, holding that service on Mr. Tejada was insufficient to serve Dolphin with notice of the tax sale and thus negated the sale. Ms. Caswell subsequently achieved quiet title against both plaintiff and the third party who had bought the property. Plaintiff appealed, but the third-party purchaser settled with Ms. Caswell. Subsequently, plaintiff settled with Ms. Caswell by payment of $100,000.00.

By letter of March 3, 2000, plaintiff submitted to the IRS a claim under the Federal Tort Claims Act, 28 U.S.C. § 2401(b) (1994), seeking damages for the IRS's alleged negligence in seizing, levying, and selling the property; for misrepresenting and omitting facts related to the legality of the seizure under the subpoena; and for fraud. The IRS denied the claim.

Plaintiff's four-count complaint in the Court of Federal Claims alleges breach of contract, breach of the covenant of good faith and fair dealing, tortious breach of contract, and restitution. He seeks to recover the $107,000.00 paid for the property and the $100,000.00 paid to Ms. Caswell to settle the quiet title action, plus associated legal fees. Plaintiff also seeks an unspecified amount of recovery for emotional distress and for lost profits on the sale of his personal residence, which he purportedly sold to obtain funds to satisfy the settlement. In its motion to dismiss, defendant argues that the statute of limitations bars this cause of action. Alternatively, defendant moves to dismiss or for summary judgment on grounds that plaintiff bore the risk of loss for the IRS's alleged negligence on the contract of sale and that subject matter jurisdiction is lacking over plaintiff's claims for tortious breach of contract and restitution.

## DISCUSSION

### 1. Standards for motion to dismiss and motion for summary judgment

When a federal court reviews the sufficiency of a complaint, whether on the ground of lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) or for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4), "its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* To this end, the court must accept as true the facts alleged in the complaint, *see Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746, 747 (Fed. Cir.1988), and must construe such facts in the light most favorable to the pleader, *see Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995). When deciding a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts in the complaint. The court is required to decide

---

**2.** Neither party identifies the documents produced with specificity, and they dispute whether the documents represent the entire collection file for the property.

any disputed facts which are relevant to the issue of jurisdiction. *Reynolds*, 846 F.2d at 747. "Ambiguities with regard to jurisdiction should be 'resolved against the assumption of jurisdiction.'" *Novell v. United States*, 46 Fed.Cl. 601, 606 (2000) (quoting *Mars, Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1373 (Fed.Cir.1994)).

Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law and no disputes exist over material facts that may significantly affect the outcome of the suit. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. The moving party bears the burden of demonstrating the absence of genuine disputes over material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### 2. *Statute of limitations*

■ Civil actions brought against the United States in the Court of Federal Claims must be filed within six years of accrual. 28 U.S.C. § 2501 (1994). Because the limitations period is an express condition of the Government's consent to be sued, the court has no power to toll the running of the statute of limitations on equitable grounds. *Hart v. United States*, 910 F.2d 815, 818–19 (Fed.Cir.1990).

■ A cause of action accrues when all of the events necessary to fix the alleged liability of the Government have occurred and the claimant is legally entitled to bring suit. *Catawba Indian Tribe of So. Carolina v. United States*, 982 F.2d 1564, 1570 (Fed. Cir.1993); *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir.1988). If events that reasonably might

be anticipated to affect plaintiff's legal rights have not yet transpired, the claim has not accrued because the claim cannot mature, for limitations purposes, before plaintiff has a proper cause of action to plead. *United States v. Dickinson*, 331 U.S. 745, 749, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947); *Terteling v. United States*, 167 Ct.Cl. 331, 338, 334 F.2d 250, 254 (1964). Ignorance of all the facts does not alone suffice to toll the statute of limitations. Plaintiff need only be aware of sufficient facts to know a wrong occurred. *Japanese War Notes Claimants Assoc. v. United States*, 178 Ct.Cl. 630, 634, 373 F.2d 356, 359 (1967). It is not necessary that plaintiff be fully appraised of the merits of the claim or the extent of damages before filing suit. *Boling v. United States*, 220 F.3d 1365, 1371 (Fed.Cir.2000) (rejecting proposition that filing of lawsuit can be postponed until full extent of damages is known); *Catawba*, 982 F.2d at 1572 (holding that misunderstanding as to meaning of law does not toll accrual of cause of action when all relevant facts are known).

Plaintiff asserts that his claim accrued on March 6, 1998, the date on which the California appellate court entered judgment for Dolphin. Defendant's first challenge is that plaintiff's claim in fact accrued on June 16, 1992, when plaintiff entered the contract of sale with the IRS. Because at the date of the sale the risk of loss as to the property had been assumed by plaintiff, defendant charges plaintiff with awareness of any potential claims against the Government when he chose to bid on the property. Whether plaintiff bore the risk of loss is itself the factual determination at issue in this case. Moreover, this circular argument asks for a finding that, in order to preserve his rights, a tax sale purchaser must assume a defect in the sale and file a claim against the Government before any facts supporting any such a defect manifest. Defendant cites no authority for this bizarre proposition,[3] a proposition

---

3. Defendant cites to *Hopland Band,* but does not illuminate how that case stands for the proposition that accrual began at the time of sale. The issue in *Hopland Band* was whether the Government's allegedly fraudulent conduct equitably tolled the statute of limitations on plaintiff Indian tribe's claim for breach of a trust agreement, and

the parties stipulated that the cause of action had accrued over 20 years prior to the commencement of the lawsuit. More importantly, the Federal Circuit did not discuss the effects of a risk of loss disclaimer, as none was present in the trust agreement.

that is contradicted by the definition itself of the accrual of claims.

Plaintiff indisputably had notice of the possibility of a claim against the United States as early as December 1992 when Ms. Caswell informed him of Dolphin's belief that the seizure and sale of the property had been improper. Defendant concedes that the IRS's sale of the property to plaintiff was not voided automatically by the trust's allegations of improper seizure. *Cf. Koby v. United States,* 47 Fed.Cl. 99, 105 (2000) (holding that improper seizure makes tax sale contract voidable at purchaser's option). Thus, resolution of the accrual issue is a subjective inquiry into the date, based on facts known to plaintiff, on which plaintiff should have known of the accrual of a claim against the United States.

■■■ Defendant next argues that plaintiff's claim accrued when plaintiff began to incur legal expenses in his suit for quiet title brought against Ms. Caswell, Dolphin, and the United States in federal court in 1993. Nonetheless, the mere suffering of damages will not start the statute running before events are sufficiently certain to support a claim. *Applegate v. United States,* 25 F.3d 1579, 1582 (Fed.Cir.1994). A claim cannot accrue before a plaintiff has sufficient facts to know whether his damages could be connected to a wrong by defendant. *Hopland*

*Band,* 855 F.2d at 1577. In other words, the mere expenditure of legal expenses cannot accrue a cause of action until it is known whether plaintiff had a right to claim those expenses as damages against the United States. *Boling,* 220 F.3d at 1372; *State of Illinois v. United States,* 15 Cl.Ct. 399, 406 (1988).

■■■ Defendant points to no facts, other than Ms. Caswell's allegations and plaintiff's legal fees, to suggest that plaintiff knew, or should have known, of the IRS's potentially culpable conduct. Information regarding the allegedly defective notice was within the IRS's exclusive knowledge and not available through a title search. Furthermore, defendant's argument mischaracterizes plaintiff's claim as one for reimbursement or indemnification. While plaintiff seeks to recover legal fees incurred in defending title to the property, plaintiff seeks such fees as direct damages of defendant's alleged breaches of contract and related covenants. The cause of action could not accrue until plaintiff knew, or should have known, of facts supporting such a breach.[4]

In their efforts to find a legal proposition supportive of their respective sides, both plaintiff and defendant fail to appreciate the fact-intensive nature of the accrual inquiry. Each of plaintiff's independent causes of ac-

---

4. The court nevertheless rejects plaintiff's argument that, together with *State of Illinois, Terteling* stands for the proposition that, as a matter of law, a cause of action against the United States cannot accrue prior to the conclusion of a third-party claim against the plaintiff based on the same or similar facts. To the contrary, both cases involved factual determinations. Plaintiff relies principally on *Terteling* where the Government had promised lands to contractor plaintiffs "without cost." 167 Ct.Cl. at 334, 334 F.2d at 254. The landowners successfully sued plaintiffs to recover the lands, and plaintiffs, in turn, sued the United States for breach of contract. Citing the Supreme Court's admonition in *Dickinson,* against encouraging piecemeal or premature litigation, 331 U.S. at 745, 67 S.Ct. 1382, the Court of Claims held that plaintiffs' cause of action did not accrue for statute of limitations purposes until the completion of the litigation brought by the landowners. 167 Ct.Cl. at 331, 334 F.2d 250.

Defendant's attempt to distinguish *Terteling* on the ground that the Government in that case filed an *amicus* brief to the effect that it may be liable

for any judgment entered against the plaintiffs is not fully persuasive. The filing of an *amicus* brief is not tantamount to an agreement assuming liability or offering indemnification, and it is significant only to show that the Government was more cooperative in that state case than in the instant one. However, no case since *Terteling* was decided in 1964 has held that, as matter of law, a cause of action cannot accrue until the completion of the prior law suit. Because the decision in *Terteling* is merely analogous and not directly on point, the court declines to apply it to defeat defendant's motion.

The court also rejects the applicability of *State of Illinois,* a case distinguishable on its facts. It is true that the Claims Court held that a plaintiff's cause of action did not accrue until litigation brought by a third party was completed. Unlike the case at bar, *State of Illinois* involved an agreement between the parties to wait for the outcome of an appellate decision before litigating their liability as to each other because the judgment ultimately would affect the amount of damages that each would seek from the other. 15 Cl.Ct. at 407.

tion stems from damages plaintiff suffered when the California appellate court held the IRS's seizure of the property improper. The inquiry becomes whether plaintiff knew, of should have known, of his cause of action against the Government prior to that judicial determination and prior to six years before the filing of his complaint on November 14, 2000.

No facts support an inference that plaintiff knew or should have known of his cause of action against the Government at the onset of litigation. Although the IRS knew of the potential impropriety prior to the sale, it did nothing, either formally or informally, to reject or substantiate Ms. Caswell's allegations. Although it answered plaintiff's complaint in the federal law suit, the Government did not take a position as to the merits, nor did it appear as a party or *amicus* in Ms. Caswell's suit. Moreover, the facts concerning the allegedly defective notice were in the IRS's exclusive possession and inherently unknowable through a title search or other measures that plaintiff might have taken to demonstrate due diligence. The earliest date that plaintiff could be said to have possessed sufficient facts to know whether he had a claim against the Government would be August 17, 1995, the date on which the IRS responded to Dolphin's subpoena with documents related to the levy and seizure of the property. It was not until that date that information concerning the levy and seizure left the IRS's exclusive possession.[5] The parties' dispute over whether the documents represent the entire collection file for the property is irrelevant to this determination, as the August 17, 1995 date comes within the statute of limitations period.

Although the more prudent course of action would have been for plaintiff to file suit in the Court of Federal Claims immediately following the California district court's dismissal of plaintiff's suit against the United States, the court cannot find as a factual matter that the cause of action accrued any earlier than the date on which the IRS allowed its allegedly negligent conduct to be known to plaintiff. Defendant's motion to dismiss the complaint as time barred therefore must be denied.

### 3. *Breach of contract*

 Defendant moves to dismiss plaintiff's claim for breach of contract on the ground that the disclaimers in the Notice of Public Auction and Notice of Encumbrances shifted the risk of loss for breach to plaintiff and thus preclude him from suing the Government for defects related to that auction. Disclaimers of warranty and "as is" offers of sale are enforceable contract provisions sufficient to transfer the risk of loss to a purchaser of government property. *Varkell v. United States*, 167 Ct.Cl. 522, 524, 334 F.2d 653, 654 (1964); *Price v. United States*, 46 Fed.Cl. 640, 650 (2000); *Morris v. United States*, 33 Fed.Cl. 733, 745 (1995). The "as is" language used in the IRS's Notice of Encumbrances is such an enforceable provision. *Martin v. United States*, 37 Fed.Cl. 86, 92 (1996); *Pia v. United States*, 7 Cl.Ct. 208, 211 (1985).

 It is a basic tenet of contract law that the scope of a provision is to be construed according to its plain and unambiguous meaning. *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 388, 351 F.2d 972, 974 (1965); *Price*, 46 Fed.Cl. at 647. Moreover, it is to be construed as much as possible in harmony with other contractual provisions. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed.Cir.1996); *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed.Cir.1983).

 The IRS's disclaimers were straightforward and unambiguous and expressly provided that the buyer, not the IRS, was to assume all risks arising from the sale transaction. Nonetheless, the issue has not been defined as whether plaintiff bore the risk of loss, but whether, as a matter of law, the loss of the property due to the California courts' determination of the IRS's improper seizure was within the scope of that risk of loss. Of immediate import, the disclaimers appear on a Notice of Encumbrances. The IRS effec-

---

**5.** As a practical matter, it would seem that at some point in discovery prior to the delayed response of the IRS to Dolphin's subpoena, Dol-

phin provided plaintiff with sufficient facts to accrue plaintiff's claim. That discovery history is not before the court.

tively disclaimed liability for the correctness or completeness of the encumbrances and their priority. Moreover, the IRS announced in the Notice of Encumbrances and orally at auction that Dolphin had recorded a grant deed in the property. If Ms. Caswell had successfully sued plaintiff because she was a senior lienholder, the terms of sale would bar plaintiff's claim because plaintiff bore the risk of the existence of and claims by a senior lienholder, even those unknown at the time of sale. But Ms. Caswell did not sue as a lienholder: She challenged the very title given to plaintiff by the IRS. Plaintiff's claim is similarly unique because his claim is not that the property itself failed to conform with the IRS's representations, but that the IRS lacked the very authority to conduct the sale.

The Notice of Encumbrances expressly warranted that "[n]otice of sale has been given in accordance with legal requirements." According to well-established principles of contract interpretation, the IRS's disclaimer necessarily is limited by contemporaneous written representations of warranty. *See C.J. Betters, Corp. v. United States*, 21 Cl.Ct. 378, 384 (1990), *vacated by* 30 Fed.Cl. 438 (1994), *reinstated by* 69 F.3d 553 (Fed.Cir. 1995); *Restatement (Second) of Contracts* § 203(a) (1982) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"). Defendant attempts to distinguish *C.J. Betters*, asserting that *Badgley v. United States*, 31 Fed.Cl. 508, 511 n. 9 (1994), "refused to apply" *C.J. Betters'* reasoning to a dispute over whether a disclaimer that "buyers are aware that one [housing] unit is non-conforming" precluded a claim for breach of contract when the purchaser could not legally use the unit in a way it had anticipated. On the contrary, a careful reading of *Badgley* shows that the trial court did not reject *C.J. Betters:*

The holding in *Betters,* however, is distinguishable from the case at hand because *Betters* involved a situation in which it was impossible to give meaning to both a representation and an as-is clause contained in the contract at issue. Here, unlike *Betters,* we can harmoniously construe the as-is clause with the contract's representations. This is because plaintiffs have not demonstrated that the clause "BUYERS ARE AWARE THAT ONE UNIT IS NON–CONFORMING" is an inaccurate description of the second unit. Accordingly, we read the "as-is, where-is" disclaimer in harmony with the "BUYERS ARE AWARE THAT ONE UNIT IS NON–CONFORMING" clause.

31 Fed.Cl. at 511 n. 9.

It does not appear that the IRS's statement that "[n]o claim will be considered for allowance or adjustment or for rescission of the sale based on failure of the property to conform with any expressed or implied representation" harmoniously can co-exist with the express warranty that "[n]otice of sale has been given in accordance with legal requirements." To conclude that, as a matter of law, the "as-is" language precludes a cause of action predicated on the IRS's failure to provide notice of sale "in accordance with legal requirements" would be to render the express warranty a nullity. Defendant makes no argument that would avoid this result.[6] Defendant's motion for summary judgment on the breach of contract claim therefore must be denied.

### 4. Breach of the covenant of good faith and fair dealing

▮▮▮▮▮ The obligation of good faith and fair dealing is implied in every contract with the Government. *Maxima Corp. v. United States,* 847 F.2d 1549, 1556–57 (Fed.Cir. 1988). The obligation is not ethereal; it must attach to a specific, substantive obligation, mutually assented to by the parties.

---

**6.** Although defendant argues otherwise, the court's conclusion that plaintiff's claim for breach of contract withstands defendant's motion for summary judgment does not implicate the doctrine of *res judicata* or that of collateral estoppel. Plaintiff has not moved for summary judgment, and no decision on the merits of his claim is made today. Nor is denial of defendant's motion for summary judgment predicated on a decision on the merits. Rather, construing all facts in the light most favorable to plaintiff, defendant has failed to establish as a matter of law that plaintiff's claim is within the scope of the express disclaimers.

*State of Alaska v. United States,* 35 Fed.Cl. 685, 704 (1996), *aff'd,* 119 F.3d 16 (Fed.Cir. 1997). Because government officials are presumed to act in good faith in the discharge of their duties, the burden of proof is high. *Spezzaferro v. FAA,* 807 F.2d 169, 173 (Fed. Cir.1986). To prevail on a claim for breach of good faith and fair dealing, a plaintiff must allege and prove facts constituting a specific intent to injure plaintiff on the part of a government official. *Texas Instruments, Inc. v. United States,* 991 F.2d 760, 768 (Fed.Cir.1993). On summary judgment the court therefore must examine the record for evidence of malice or an intent to injure plaintiff as demonstrated by specific acts of bad faith.

■■■ Plaintiff alleges that the IRS breached its implied covenant of good faith and fair dealing by failing to disclose the defects in the lien and levy of the property, by failing to assist plaintiff with his defense of his ownership to the property, and by hindering his defense of title by failing to respond to Dolphin's subpoena either timely or completely. *See* Compl. filed Nov. 14, 2000, ¶ 34. As an initial matter, plaintiff does not allege that he ever asked the IRS to assist in his defense. The contract of sale does not mandate such an affirmative duty, and plaintiff does not argue that the implied duty of good faith and fair dealing encompasses such assistance. Therefore, plaintiff's claim for breach of the implied covenant of good faith cannot rest on the IRS's failure affirmatively to assist in his legal defense.

Regarding the allegations that the IRS failed to disclose defects concerning the lien and levy of the property and failed in its legal duty to respond to Dolphin's subpoena, defendant first argues that plaintiff cannot allege or prove specific facts to support a breach of good faith because the disclaimer in the relevant notices shifted the risk of loss to plaintiff and effectively removed the IRS's obligations to perform in good faith. Again, defendant's argument assumes the issue before the court—whether, assuming that the IRS acted improperly in levying and seizing the property, plaintiff bore the risk of loss when the original owner reclaimed it. More importantly, defendant cites no authority for the proposition that the mere existence of a risk of loss disclaimer excuses the Government from the implied obligation to act in good faith and to deal with purchasers fairly. Finally, by the express terms of the contract, the IRS only purported to sell the legal interest of Mr. Tejada, but this fact does not, as a legal matter, conclude the issue of whether the IRS breached its duty of good faith and fair dealing by either failing to disclose the questionable legality of the seizure or by failing to appropriately respond to Dolphin's subpoena.

As to the sale itself, defendant notes that plaintiff did not allege that at the time of the June 16, 1992 tax sale, the IRS lacked a good-faith belief that it had followed the requirements of the governing statute. Indeed, in his complaint, plaintiff alleges that it was not until the commencement of his federal action that the IRS obtained information that the levy and seizure of the property may have been procedurally defective. The commencement of the federal action in 1993 necessarily succeeded the tax sale, and thus plaintiff cannot rightly allege both that the Government breached its duty of good faith and fair dealing at the time of the tax sale in 1991, but did not have knowledge of the possible defect in pre-sale procedures until 1993.

While plaintiff's complaint fails to state a *prima facie* case, for some reason defendant has submitted the declaration of the IRS officer charged with the seizure and sale of the property, who admits that the IRS both knew of the alleged defect, as well as discussed its potential legal effect prior to the tax sale. Declaration of Jane Allen, Aug. 14, 2001, ¶¶ 9–11. Pursuant to RCFC 12(b)(4), the court treats defendant's motion to dismiss as a motion for summary judgment because defendant offers and the court considers materials beyond the pleadings. *See Dairyland Power Co-op. v. United States,* 16 F.3d 1197, 1201 (Fed.Cir.1994). The affidavit establishes that plaintiff can prove facts sufficient to show the IRS knew of the potential defect in notice, but proceeded with the sale regardless, so defendant cannot establish that plaintiff will be unable to prove that

such an inaction represents bad faith on the part of the IRS.

Regarding the failure timely to respond to the subpoena, plaintiff states a claim upon which relief can be granted because defendant does not dispute that the property records were not produced timely. Summary judgment is inappropriate because the parties dispute whether the IRS responded to the subpoena with the full record history of the property. Defendant's assertion that under the IRS's record-control procedures, records of seizures and sales of property may be destroyed after two years or once the applicable redemption period expires does not preclude the possibility that plaintiff can show that the records were destroyed in bad faith. Significantly, defendant makes no contention that such destruction is what occurred in this case. The fact that the documents may have been so destroyed may be enough to defeat plaintiff's claim on the merits, but does not establish as a matter of law that plaintiff cannot succeed on his claim. Similarly, the fact that the IRS may have an affirmative statutory obligation to protect the confidentiality contained in some of the records, *see* 26 U.S.C. § 6103 (1994), cannot support summary judgment when the record does not provide even a hint as to the nature of the disputed records. Defendant's motion for summary judgment as to the issue of whether the IRS breached its duty of good faith and fair dealing when it failed timely and fully to respond to the subpoena therefore is denied.

### 5. *Tortious breach of contract*

 The United States Court of Federal Claims lacks jurisdiction over tort claims. 28 U.S.C. § 1491(a)(1) (1994 & Supp. V 1999); *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997). A claim for tortious breach of contract, in contrast, is not a tort independent of the contract so as to preclude Tucker Act jurisdiction. *Burtt v. United States,* 176 Ct.Cl. 310, 315, 1966 WL 8878 (1966). This is true regardless of whether the loss resulted from the negligent manner in which the Government performed the contract, *Chain Belt Co. v. United States,* 127 Ct.Cl. 38, 54, 115 F.Supp. 701, 712 (1953), although it is not

enough that the conduct is merely related in some general sense to the contractual relationship of the parties. *L'Enfant Plaza Prop., Inc. v. United States,* 227 Ct.Cl. 1, 11, 645 F.2d 886, 892 (1981). For jurisdictional purposes the tortious conduct must specifically relate to a contractual obligation. *Id.*

 Plaintiff alleges that the IRS's conduct represents negligent performance of the contract and/or intentional interference with the contract in order to protect the United States, the IRS, and its employees. *See* Compl. ¶ 37. Defendant moves first to dismiss the claim for lack of jurisdiction, a difficult task because the complaint does not specify which instances of conduct are alleged to support a claim for tortious breach of contract. To the extent that plaintiff predicates this count on the allegation that the IRS's tortious conduct led it to breach the contractual provision warrantying "notice of sale has been given in accordance with legal requirements," the court has jurisdiction over the claim because the alleged erroneous representation is written into the contract. *See Summit Timber v. United States,* 230 Ct.Cl. 434, 440–41, 677 F.2d 852, 856 (1982) (holding that Claims Court has jurisdiction over tortious breach of contract claim where contract documents contain erroneous factual representations at issue); *cf. Dakota Tribal Indus. v. United States,* 34 Fed.Cl. 295, 299 (1995) (holding that Court of Federal Claims lacks jurisdiction over tortious breach of contract claim where erroneous factual representations preceded execution of contract and were not incorporated into it). To the extent that plaintiff predicates this count on the allegations that the IRS failed affirmatively to assist in his defense of Ms. Caswell's quiet title suit and failed to respond to Ms. Caswell's subpoena in a timely and complete manner, the court lacks jurisdiction over the claim. Plaintiff fails to show any connection between the IRS's conduct during the litigation and any contractual obligation owed to him under the contract of sale. As such, these allegations lie in tort and must be dismissed for lack of jurisdiction.

Although the representation of notice was incorporated into the contract, defendant

next argues that plaintiff has failed to state a claim upon which relief can be granted. Characterizing the claim as one of misrepresentation, defendant argues that the disclaimers in the contract for sale preclude plaintiff from meeting the required elements of a misrepresentation claim. Plaintiff, however, does not seek redress for negligent misrepresentation, but for tortious breach of contract. Negligent misrepresentation is a cause of action distinct from tortious breach of contract. The difference is significant as to jurisdiction, for while the former is a claim sounding in tort, the latter is not a tort independent of a contract. *See generally Dakota*, 34 Fed.Cl. at 297 (citing *Aetna Cas. & Sur. Co. v. United States*, 228 Ct.Cl. 146, 164, 655 F.2d 1047, 1059 (1981)). As in the case at bar, where alleged misrepresentations are "so closely bound up" with the contractual relationship, plaintiff's action properly lies in contract rather than tort. *L'Enfant Plaza*, 227 Ct.Cl. at 11, 645 F.2d at 892.

In any event, plaintiff's claim survives even if more properly analyzed as one for misrepresentation. A misrepresentation claim requires proof that the Government made a misrepresentation of a material fact that the plaintiff honestly and reasonably relied on to his detriment. *T. Brown Constructors v. Pena*, 132 F.3d 724, 729 (Fed.Cir. 1997). Defendant contends that the disclaimers made it both impossible for the IRS to have made a misrepresentation and impossible for plaintiff to have been justified in relying on any such misrepresentation. Defendant's argument must be rejected because the court cannot find as a matter of law that the disclaimer of representations as to the validity of title and encumbrances served to negate the affirmative representation that "notice of sale has been given in accordance with legal requirements." Defendant cites no authority for the proposition that the existence of disclaimers precludes a party from making affirmative misrepresentations. As with the breach of contract claim, the issue here is whether any alleged misrepresentations fell within the scope of the disclaimers, and the court has explained that plaintiff's assertion is unique in that he is not alleging merely a defect in title, but challenging the very authority of the IRS to conduct the tax sale. For the same reason, defendant cannot show why the disclaimers preclude plaintiff from properly alleging justifiable reliance on the IRS's express contractual warranty. Indeed, the Court of Claims rejected a similar argument in *Summit Timber*:

> [The contract] contained positive, but erroneous, representations upon which plaintiff in fact relied in bidding on, entering into and performing, the said contract. That those erroneous "positive representations" were that defendant had taken certain actions prior to contract formation (parenthetically, a not unusual situation) is plainly no defense to an action for breach of contract based upon misrepresentation.

230 Ct.Cl. at 440, 677 F.2d at 856–57 (footnote and citations omitted).

## 5. Restitution

In the last count of his complaint, plaintiff alleges that the execution of his obligations under the tax sale contract was based upon mutual and unilateral mistakes and the IRS's tortious conduct. He seeks rescission of the contract, return of the purchase price, and restitution of the benefits conferred on the United States under the contract, including such additional amounts as would equitably restore the parties to their positions prior to the contract. *See* Compl. ¶¶ 41–44. Defendant moves to dismiss this claim for lack of jurisdiction, with the now familiar incantation that, because plaintiff bore the risk of loss under the contract, no basis exists for restitution under either a theory of mutual mistake or misrepresentation.

Where there has been a mistake of material fact such that a contract does not faithfully embody the parties' actual intent, rescission and restitution may be available to the adversely affected party. *Roseburg Lumber Co. v. Madigan*, 978 F.2d 660, 665 (Fed.Cir.1992). A claim for rescission, whether based on mutual or unilateral mistake, can be granted only when the party seeking rescission did not bear the risk of that mistake. *Dairyland Power*, 16 F.3d at 1201 (mutual mistake); *Meek v. United States*, 26 Cl.Ct. 1357, 1362 (1992) (unilateral mistake); *see also Northrop Grumman Corp.*

*v. United States,* 47 Fed.Cl. 20, 55 (2000) (discussing when party bears risk of loss). The "as is" language in the IRS's tax sale notices have been found to allocate the risk of loss to the tax sale purchaser so as to preclude a claim for rescission based on either mutual or unilateral mistake as to the condition of the property. *Morris,* 33 Fed. Cl. at 748.

 Defendant has not been successful in sponsoring its theory that plaintiff bore the risk of loss for the IRS's improper levying and seizure of the property. Because the court cannot say as a matter of law that plaintiff bore the risk of loss as to the IRS's alleged failure to properly levy and seize the property, defendant's motion to dismiss plaintiff's claim for rescission must be denied.

### 6. *Miscellaneous damages*

Under the heading of "restitution," defendant also seeks to dismiss certain of plaintiff's damages claims. It argues that an award of attorneys' fees, payments made to Ms. Caswell, lost profits, emotional distress, and pain and suffering are claims for consequential damages not recoverable under a contract theory and thus beyond the court's jurisdiction. It also makes various arguments to the effect that plaintiff's prayer to recover the $100,000.00 paid to Ms. Caswell in settlement of the quiet title action and lost profits from the residential home he sold to satisfy the settlement are too speculative to be recoverable.[7]

 As a matter of law, unforeseeable consequential damages cannot be recovered in the Court of Federal Claims. *Bohac v. Dept. of Agriculture,* 239 F.3d 1334, 1339 (Fed.Cir.2001). Whether damages are foreseeable is a factual determination made at the time of contract formation. *Id.* at 1340. The court cannot award damages, whether or not foreseeable, when the damages are ultimately grounded in tort rather than contract. *Kania v. United States,* 227 Ct.Cl. 458, 465, 650 F.2d 264, 269 (1981); *H.H.O., Inc. v. United States,* 7 Cl.Ct. 703, 708 (1985).

 The court lacks jurisdiction to award plaintiff's prayer for damages for emotional distress and pain and suffering. Except in limited circumstances related to common carriers and innkeepers not applicable here, the court cannot award damages for the emotional consequences of a breach of contract because such consequences are speculative as a matter of law. *Bohac,* 239 F.3d at 1340. In addition, the lost profits and expected future profits from the sale of plaintiff's residential home are too speculative and remote to be recovered. Plaintiff alleges no plans to sell the home nor adduces a single fact that would support the suggestion that a loss on the home sale could have been contemplated by the parties at the time of the auction.

 Regarding plaintiff's claim for attorneys' fees, the court cannot conclude that plaintiff will be unable to show at trial that the fees were a direct and foreseeable consequence of the alleged breach of contract. It does not immediately appear remote or speculative that a breach of the warranty that "notice of sale has been given in accordance with legal requirements" would result in the purchaser's defending a quiet title action brought by the original owner. Defendant's reliance on *Kania* is inapposite. It is true there that the court in dicta questioned as "dubious" its jurisdiction to award a claim for attorneys' fees on a theory of breach of contract. *Kania,* 227 Ct.Cl. at 467, 650 F.2d at 269. *Kania* is distinguishable because it dealt with the circumstances of a criminal case, and it was unclear whether an agreement between a prosecutor and a defendant was a money-mandating agreement sufficient to support Tucker Act jurisdiction. *See Sanders v. United States,* 252 F.3d 1329, 1335 (Fed.Cir.2001) (discussing reasoning of *Kania* ). Defendant cites no precedent holding that, as a matter of law, legal fees cannot be the direct and foreseeable consequence of a breach of contract. To the contrary, where legal fees incurred in an action by a third party are determined to be a direct and foreseeable consequence of defendant's

---

7. Defendant does not move to set aside the prayer for recovery of the purchase price plus accumulated interest from June 16, 1992, or the re-

covery of additional amounts directly related to that purchase.

breach, they have been awarded. *Compare Terteling,* 167 Ct.Cl. at 340, 334 F.2d at 255–56 (award of legal fees incurred in defense of action by property owner proper where Government breached contractual duty to provide plaintiff with property at "no cost") *with Albermarle Bank and Trust Co. v. United States,* 12 Cl.Ct. 704, 706–07 (1987) (declining to award legal fees incurred in defense of action based on equipment loan foreclosure where Farmer's Home Administration refused to issue final portion of business loan to plaintiff). Because the issue of whether plaintiff's legal fees were the foreseeable consequence of defendant's alleged breach is a factual one, summary judgment is inappropriate.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss is granted with respect to plaintiff's claim for emotional distress and pain and suffering and plaintiff's claim of restitution for lost profits from the sale of his residential home and is otherwise denied. These claims are dismissed for lack of jurisdiction.

2. Defendant's motion for summary judgment is granted on the merits with respect to plaintiff's claims for breach of the duty of good faith and fair dealing and for tortious breach of contract based on the IRS's failure to affirmatively assist in his defense of Ms. Caswell's quiet title suit and is otherwise denied without prejudice.

3. The parties shall file a Joint Status Report by October 15, 2001, proposing a schedule for further proceedings.