NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WHITE BUFFALO CONSTRUCTION, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-5045

---

Appeal from the United States Court of Federal Claims in Nos. 99-CV-961, 00-CV-415, and 07-CV-738, Senior Judge Loren A. Smith.

---

Decided: November 1, 2013

---

SCOTT J. KAPLAN, Stoel Rives, LLP, of Portland, Oregon, argued for plaintiff-appellant. With him on the brief was RICHARD E. ALEXANDER.

TIMOTHY P. MCILMAIL, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director. Of counsel on the brief was RAYANN

SPEAKMAN, Attorney, United States Department of Transportation, Federal Highway Administration, of Vancouver, Washington.

_____

Before PROST, BRYSON, and REYNA, *Circuit Judges.*

PROST, *Circuit Judge.*

White Buffalo Construction, Inc. ("White Buffalo") appeals from final judgment of the United States Court of Federal Claims disposing of all claims in consolidated case nos. 99-CV-961 (the "1999 Case"), 00-CV-415 (the "2000 Case"), and 07-CV-738 (the "2007 Case"). *White Buffalo Const., Inc. v. United States*, 101 Fed. Cl. 1 (2011). We affirm in part and vacate in part and remand as detailed below.

## BACKGROUND

The Federal Highway Administration ("FHA") contracted with White Buffalo to repair damaged roads in the Sikiyou National Forest in the fall of 1998. On December 1, 1998, the FHA decided to terminate the contract for default, and White Buffalo was instructed to stop all work immediately.

White Buffalo subsequently filed the 1999 Case, challenging the FHA's default termination. One year later White Buffalo filed the 2000 Case, seeking to recover liquidated damages paid by White Buffalo's surety.

Prior to the scheduled trial of the 1999 and 2000 Cases, the FHA's legal counsel requested authority from the Department of Justice ("DOJ") to convert the termination for default into a termination for convenience of the government. The legal counsel noted that trial preparation had uncovered a substantial question as to whether the project could have been completed on time by White Buffalo due to some unexpected site conditions. Pursuant

to DOJ authorization, the FHA converted the termination and released the liquidated damages.

Following the conversion, White Buffalo sought to continue litigating the 1999 and 2000 Cases, arguing that the conversion took away its right to relief under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, through which White Buffalo alleges it could have obtained attorney fees. White Buffalo also filed the 2007 Case to obtain lost profits on uncompleted work due to the FHA's alleged bad faith conduct and to challenge the amount of the termination for convenience settlement awarded by the FHA.

After a trial, the Court of Federal Claims found that the 1999 and 2000 Cases were moot due to the FHA's conversion of the default termination to one of convenience. However, it failed to dismiss those two cases in its judgment. The Court of Federal Claims also found that the FHA did not act in bad faith toward White Buffalo and awarded no lost profits for uncompleted work. It did award White Buffalo a total of $353,237.36, plus interest, on White Buffalo's termination for convenience claim.

## DISCUSSION

On appeal, White Buffalo challenges the Court of Federal Claims' judgment on seven grounds. We address each of these challenges in turn.

### A. The Validity of the Termination for Convenience Conversion

First, White Buffalo questions whether the DOJ could moot the 1999 and 2000 Cases by converting a default termination to a termination for convenience, arguing that the conversion unlawfully took away White Buffalo's EAJA claims. However, we have stated that "[a]lthough securing attorney fees may understandably affect a party's litigation strategy, the availability of EAJA fees is not an appropriate consideration for a court when determin-

ing how to dispose of a case." *Chapman Law Firm Co. v. Greenleaf Const. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007). Therefore, without regard to EAJA, the Court of Federal Claims properly found that the conversion mooted the claims presented and relief sought in the 1999 and 2000 Cases. Since the Court of Federal Claims did not reflect this in its judgment, we remand the 1999 and 2000 Cases to the Court of Federal Claims with directions to dismiss.

## B. De Novo Review of White Buffalo's Claims in the 1999 and 2000 Cases

White Buffalo argues that the Court of Federal Claims failed to conduct a de novo review of the FHA's initial default termination decision. However, once the conversion occurred, White Buffalo was no longer identified as a defaulting party, so we need not consider whether the Court of Federal Claims properly reviewed the motive behind the FHA's initial determination.

## C. White Buffalo's Subcontractor Claims

The Court of Federal Claims found that White Buffalo was entitled to $29,528 in claimed "settlement expenses" related to White Buffalo's subcontractor claims, but it appears this award was not included in the judgment. Since it is unclear whether this was an error or whether this omission was intentional, we vacate in part the judgment for the 2007 Case and remand to the Court of Federal Claims so that it may consider whether to increase the judgment by $29,528.

## D. White Buffalo's Testimony on Profit Margins

White Buffalo argues that it offered factual and opinion testimony supporting a 44% profit margin on pre-termination work and that the Court of Federal Claims erred in rejecting that testimony. We note that an abuse of discretion review applies to the *methodology* for calculating the rate of profit, while clear error review applies to the calculation of the amount itself. *See Home Savs. of*

*Am. v. United States*, 399 F.3d 1341, 1347 (Fed. Cir. 2005). And under the correct standard, we hold that the trial judge's choice of methodology to calculate profits based on a comparison of actual expenditures to the contract value of the work performed was not an abuse of discretion.

### E. Evidentiary Presumptions on Missing Witness Testimony

White Buffalo argues that the trial court made an error of law in failing to grant White Buffalo an evidentiary presumption that some of the Government's witnesses would have testified against the Government. Although White Buffalo was able to depose the Project Engineer and the FHA Division Engineer, neither testified at trial.[1] However, the drawing of an adverse inference based on failure to call a witness is discretionary with the trial court. *See Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1362-63 (Fed. Cir. 2010) ("[I]f [a] party chooses to not call [witnesses within his control to produce], the fact finder *may* draw the inference that the testimony would be unfavorable." (emphasis added)); *see also Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 67 (1st Cir. 2003) ("The 'missing witness' rule permits, rather than compels, the factfinder to draw an adverse inference from the absence of a witness."). Therefore, the Court of Federal Claims' failure to state that it applied a negative inference was not an error of law.

### F. Lack of Bad Faith Findings

As a preliminary matter, the Government challenges whether the Court of Federal Claims even had jurisdic-

---

[1] The FHA Division Engineer was deceased prior to the trial, and upon learning this fact at oral argument, White Buffalo focused its evidentiary presumption argument on the Project Engineer.

tion over White Buffalo's bad faith termination claim, as it was filed more than six years from the termination by default decision. *See* 41 U.S.C. § 7103(a)(4)(A). However, a claim accrues when all events necessary to fix the liability of the defendant have occurred. *See Catawba Indian Tribe of S.C. v. United States*, 982 F.2d 1564, 1570 (Fed. Cir. 1993). And there is evidence in the record to support a finding that all events relevant to White Buffalo's bad faith claim did not occur until 2000 or later, after White Buffalo discovered the alleged disparate treatment of contractors and learned of the Government's alleged "other motives." This would make the claim timely. Therefore, we hold that the Court of Federal Claims did not commit clear error in finding jurisdiction.

"For a plaintiff to successfully assert a claim for breach of the implied covenant of good faith and fair dealing respecting a contract with the government, he or she 'must allege and prove facts constituting a specific intent to injure [the] plaintiff on the part of the government[al] official." *Bannum, Inc. v. United States*, 80 Fed. Cl. 239, 246 (2008) (citing *Pratt v. United States*, 50 Fed. Cl. 469, 479 (2001)). Further, there is a presumption that government officials act in good faith, but this presumption can be overcome by evidence of such specific intent to injure. *Id.* We have observed that "[t]he contractor's burden to prove the Government acted in bad faith, however, is very weighty. Due to this heavy burden of proof, contractors have rarely succeeded in demonstrating the Government's bad faith." *Krygoski Const. Co. v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996) (citations omitted).

The evidence in the record supports a finding that the termination was motivated by a reasonable basis, as White Buffalo does not dispute that it failed to complete the repairs in a timely manner. White Buffalo argues that the FHA employee's specific intent to injure can be shown by its unequal treatment of the contractors, but as

the Government correctly points out, the assertion of a legitimate contract is not bad faith. *See Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1331 (Fed. Cir. 2003). Therefore, the evidence in the record does not show that the Court of Federal Claims erred in finding a lack of bad faith on the Government's part.

White Buffalo further argues that the conversion decision was itself in bad faith, since the FHA only made the conversion on the eve of trial to avoid liability for lost profits. But White Buffalo fails to explain how a desire to minimize the Government's litigation exposure constitutes bad faith.

The Court of Federal Claims found that "the conversion may have reasonably been made because there were questions as to whether the differing site conditions prevented White Buffalo from completing the project on time" and that "[t]he most logical inference from the facts is that government officials were divided on the complex fact issue on this project and opted to give White Buffalo the benefit of the doubt." *White Buffalo Const.*, 101 Fed. Cl. at 19. This finding was not clearly erroneous. Therefore, we affirm the Court of Federal Claims' finding that the Government did not act in bad faith.

### G. The Testimony of the Government's Lawyer

Finally, White Buffalo argues that the Court of Federal Claims abused its discretion in allowing a Government lawyer to testify at trial on rebuttal about why the FHA decided to convert the termination by default to a termination by convenience. However, the record shows that White Buffalo agreed to such limited testimony. Since we review a decision of the Court of Federal Claims in an evidentiary matter under an abuse of discretion standard and will only disturb that court's ruling if it prejudiced substantial rights, *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1341 (Fed. Cir. 1999), we

hold that the Court of Federal Claims did not abuse its discretion here.

### CONCLUSION

In accordance with our analysis above, we affirm in part, vacate in part, and remand to the Court of Federal Claims with directions to dismiss the 1999 and 2000 Cases as well as to evaluate whether the judgment in the 2007 Case should include $29,528 in awarded subcontractor damages.

## AFFIRM-IN-PART, VACATE-IN-PART, AND REMAND

### COSTS

Each party shall bear their own costs.